IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re<br><br>LAMBERTSON TRUEX, LLC,<br><br>                Debtor. | Chapter 11<br><br>Case No. 09-10747 (PJW) |

## DEBTOR'S PLAN OF LIQUIDATION

May 15, 2009

Lambertson Truex, LLC, as debtor and debtor in possession, hereby and proposes this Plan of Liquidation under Chapter 11 of title 11 of the United States Code.

# INTRODUCTION

Lambertson Truex, LLC, as debtor and debtor in possession (the "Debtor"), hereby proposes this Plan of Liquidation under Chapter 11 of title 11 of the United States Code. Reference is made to the Disclosure Statement Regarding Debtor's Plan of Liquidation, dated May 15, 2009 (the "Disclosure Statement"), for a discussion of the Debtor's history, business, capital structure, historical financial information, and for a summary and analysis of this plan.

All creditors entitled to vote on this plan should review the Disclosure Statement before voting to accept or reject this plan. Documents referenced in this plan and/or the Disclosure Statement are also available for review.

# ARTICLE I - DEFINITIONS

The capitalized terms set forth below shall have the following meanings:

1.1. **Administrative Claim** means an unsecured Claim, other than a Fee Claim, for an 'administrative expense' as that term is used in § 503 of the Bankruptcy Code.

1.2. **Allowed Claim** means a Claim, subject to Section 7.1 of the Plan, (i) which is currently scheduled as undisputed, noncontingent and liquidated in the Schedules and as to which no proof of claim has been timely filed; (ii) as to which a proof of claim has been timely filed in a liquidated, non-contingent amount and either (a) no objection thereto has been timely filed, or (b) such Claim has been allowed (but only to the extent allowed) by a Final Order of the Court; (iii) which has been expressly allowed under the provisions of this Plan or the Confirmation Order; or (iv) which is an Administrative Claim approved by Final Order of the Court. An Allowed Claim: (y) includes a previously Disputed Claim to the extent such Disputed Claim becomes Allowed when the context so requires; and (z) shall be net of any valid setoff amount against such Claim based on a valid offset right, which valid setoff amount shall be deemed to have been setoff in accordance with the provisions of this Plan. Unless otherwise specified herein or by order of the Court, Allowed Administrative Claims and Allowed Claims shall not, for any purpose under the Plan, include interest on such Administrative Claims accruing or Claims accruing on or after the Petition Date. "Allowance" means the allowance of a Claim or Interest under the Plan or the Confirmation Order or the entry of a Final Order allowing a Claim or Interest.

1.3. **Allowed Reclamation Claim** means any Claim for the reclamation of goods fully and properly asserted pursuant to § 546(c) of the Bankruptcy Code, to the extent such Claims are Allowed Claims but not paid in full.

1.4. **Asset Sale** means the sale, in one or more parts, of substantially all of the Debtor's assets to a Buyer, pursuant to § 363 of the Bankruptcy Code, approved by the Court under, or in connection with, this Plan.

1.5. **Asset Purchase Agreement** means the (or each, as applicable) asset purchase agreement between the (or each, as applicable) Buyer and the Debtor, as amended and approved by the Court pursuant to the Sale Order if applicable.

1.6.    **Available Cash** means as determined from time to time by the Liquidation Trustee, all unrestricted Cash of the Estate or Liquidation Trust on or after the Effective Date, after deduction of, without duplication: (a) amounts to be distributed to holders of Fee Claims; (b) actual, unpaid expenses and liabilities of the Estate incurred on or after the Petition Date; (c) Cash in or reserved for the Wind-Down Reserve; and (d) Cash to be distributed to, or reserved for holders of Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, Samsonite Rights, Secured Claims, and Convenience Claims.

1.7.    **Ballot** means the ballot distributed to each eligible claimant by the Balloting Agent, on which ballot such claimant may, inter alia, vote to accept or reject the Plan.

1.8.    **Ballot Deadline** means the deadline scheduled by the Court by which the Balloting Agent must receive a Ballot.

1.9.    **Balloting Agent** means the entity designated by the Court to distribute, collect and tally Ballots from claimants. Initially, unless and until otherwise ordered by the Court, the Balloting Agent is Adam Hiller, Draper & Goldberg PLLC at 1500 North French Street, Wilmington, DE 19801.

1.10.   **Bankruptcy Code** means title 11 of the United States Code, as now in effect or hereafter amended.

1.11.   **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure and the local rules of the Court (including any applicable local rules of the United States District Court for the District of DE), as now in effect or hereafter amended.

1.12.   **Business Day** means any day except a Saturday, Sunday, or "legal holiday" as such term is defined in Fed. R. Bankr. P. 9006(a), as that rule existed on the Confirmation Date.

1.13.   **Buyer** means the person(s) purchasing substantially all of the Debtor's assets, in whole or in part.

1.14.   **Cash** means cash and cash equivalents, including but not limited to bank deposits, checks, and other similar assets.

1.15.   **Chapter 11 Case** means the Chapter 11 case docketed under Case No. 09-10747 (PJW), pending before the Court.

1.16.   **Claim** means a claim against the Debtor, whether or not asserted, known or unknown, as such term is defined in § 101(5) of the Bankruptcy Code. To the extent that the holder of a Claim has received an interest in a trust on account of such Claim, "Claim" shall also refer to such interest in the trust.

1.17.   **Class** means a class of Claims or Interests, as described in § 1122 of the Bankruptcy Code.

1.18.   **Committee** means any Official Committee of Unsecured Creditors in the Chapter 11 Case, if one is appointed by the United States Trustee, as amended from time to time.

1.19.    **Confirmation Date** means the date and time upon which the Court enters the Confirmation Order on its docket, provided that in the event a Confirmation Order is reversed on appeal by Final Order, the Confirmation Date shall be the date and time upon which the Court enters another Confirmation Order after the reversal.

1.20.    **Confirmation Hearing** means the hearing by the Court to consider confirmation of the Plan.

1.21.    **Confirmation Order** means the order of the Court confirming the Plan pursuant to § 1129 of the Bankruptcy Code. When any provision of the Plan refers to a limitation under the Plan, such provision shall be construed to refer to a limitation under the Confirmation Order.

1.22.    **Convenience Claim** means any Claim that otherwise would be an Allowed General Unsecured Claim against the Debtor (i) in an amount equal to $10,000 or less, the Holder of which has not elected to receive treatment under Class 5 of the Plan by irrevocable written election of the Holder of such Claim made on a validly executed and timely delivered Ballot; or (ii) in an amount in excess of $10,000 in connection with which the Holder has elected to reduce such claim to $10,000 and receive treatment under Class 4 of the Plan by irrevocable written election of the Holder of such Claim made on a validly executed and timely delivered Ballot.

1.23.    **Court** means the United States Bankruptcy Court for the District of Delaware, or any other court exercising competent jurisdiction over the Chapter 11 Case or any proceeding therein.

1.24.    **The Debtor** means Lambertson Truex, LLC.

1.25.    **Disallowed Claim** means a Claim or portion thereof that (i) has been disallowed by a Final Order of the Court; (ii) is identified in the Schedules of Assets and Liabilities in the amount of zero dollars or as contingent, unliquidated, or disputed and as to which a proof of claim was not filed by the applicable bar date; or (iii) is not identified in the Schedules of Assets and Liabilities and as to which no proof of claim has been filed or deemed filed by the applicable bar date. For purposes of the foregoing, the applicable bar date for the United States of America and its agencies and departments shall be the applicable deadline(s) set forth in 11 U.S.C. § 502(b)(9), except as otherwise ordered by the Court.

1.26.    **Disclosure Statement Order** means the order of the Court approving adequacy of the Disclosure Statement**.**

1.27.    **Disputed Claim** means a Claim or any portion thereof which is not an Allowed Claim or a Disallowed Claim. In the event that any part of a Claim is a Disputed Claim, such Claim in its entirety shall be deemed to constitute a Disputed Claim for purposes of distribution under this Plan unless the Debtor or the Liquidation Trustee, the objecting party, and the holder thereof agree otherwise; provided, however, that nothing in this definition of Disputed Claim is shall impair any rights of the holder of a Disputed Claim under § 502(c) of the Bankruptcy Code. Without limiting any of the foregoing, but subject to the provisions of this Plan and the Confirmation Order, a Claim that is or becomes, prior to thirty days after the Effective Date, the

subject of an application, motion, complaint, objection, or any other legal proceeding to disallow, limit, subordinate, or estimate such Claim, or to avoid, extinguish, limit, discharge, or otherwise impact the collateral securing such Claim, shall be deemed to constitute a Disputed Claim until such application, motion, complaint, objection, or legal proceeding is resolved by Final Order.

1.28.    **Distribution** means a distribution in accordance with this Plan of Cash or other property, as the case may be, or the Cash or other property so distributed.

1.29.    **Distribution Address** means the mailing address for a party identified by that party in writing to the Debtor or the Liquidation Trustee, as applicable, at least 10 calendar days prior to the action for which such address may be required. If no such address has been properly identified, then it shall be the mailing address set forth in the most recently filed proof of claim relating to such party's Claim or Interest. If no proof of claim is filed with respect to a particular Claim or Interest, such defined term means the address set forth in the Schedules of Assets and Liabilities.

1.30.    **Distribution Date** means:

(a)    with respect to Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, and Secured Claims, the date that is the later of: (i) the Effective Date (or as soon thereafter as reasonably practicable); and (ii) the date (or as soon thereafter as reasonably practicable) such Claims become Allowed Claims or otherwise become payable under the Plan;

(b)    with respect to Fee Claims, the date (or as soon thereafter as reasonably practicable) that such Claims are allowed by Final Order of the Court;

(c)    with respect to all other Unsecured Claims, Convenience Claims, and Interests (subject to the priority scheme set forth in the Plan), (i) initially, as soon as reasonably practicable after the later of (A) the Effective Date and (B) 10 days after the date on which the Court has entered an Estimation Order with respect to such Claim or Interest as a Final Order; and (ii) subsequently, the first Business Day that is 90 months after the immediately preceding Distribution Date for that Class; or in the case of either (i) or (ii), such earlier or later date established by the Court or designated by the Liquidation Trustee in his/her reasonable discretion;

(d)    with respect to Secured Claims, the date of sale of the applicable collateral; and

(e)    with respect to Samsonite Rights, the Effective Date.

1.31.    **Distribution Fund** means any fund which shall be established on or after the Effective Date by the Liquidation Trustee to pay (in the event any payments are to be made to holders of such Claims) Class 5 Claims pursuant to the provisions of the Plan and the Liquidation Trust Agreement.

1.32.    **Distribution Record Date** means the date which is 10 days before each Distribution Date.

1.33.    **Effective Date** means the first Business Day at least ten calendar days after the Confirmation Date, which is the latest of:

(a)    if no stay of the Confirmation Order is in effect, the date each of the conditions set forth in Section 10.1 hereof has been satisfied;

(b)    if a stay of the Confirmation Order is in effect, on the first Business Day (or such later date as may reasonably be determined by the Debtor) after the later of:

(i)    the date such stay is vacated or any appeal, rehearing, remand or petition for certiorari is resolved in a manner that does not reverse or materially modify the Confirmation Order; and

(ii)    the date each of the conditions set forth in Section 10.1 hereof has been satisfied; and

(c)    such date as may be identified by the Debtor and the Liquidation Trustee, as evidenced by the filing of a Notice of Effective Date within five days thereafter.

1.34.    The **Estate** means the Debtor's estate created in the Chapter 11 Case pursuant to § 541 of the Bankruptcy Code.

1.35.    An **Estimation Order** means an order of the Court estimating for voting and/or distribution purposes (under § 502(c) of the Bankruptcy Code) the aggregate (and if applicable, individual) face amount of one or more Disputed Claims.  An Estimation Order also includes the Confirmation Order if the Confirmation Order grants the same relief that would have been granted in a separate Estimation Order.

1.36.    **Fee Claim** means a Claim held by a professional of the Debtor or the Estate for compensation or reimbursement of expenses pursuant to §§ 327, 328, 330, 331 or 503(b) of the Bankruptcy Code in connection with the Chapter 11 Case.

1.37.    **Fee Order** means the Administrative Order Establishing Procedures For Interim Compensation and Reimbursement of Expenses of Professionals, dated March 26, 2009, as such Order may have been subsequently amended and superceded.

1.38.    **Final Distribution** means the Distribution that the Liquidation Trustee believes or intends (at time of making such Distribution) to be the final Distribution to be made to beneficiaries of the Liquidation Trust.

1.39.    **Final Distribution Date** means the date upon which the Liquidation Trustee makes the Final Distribution.

1.40.    **Final Order** means an order or judgment of the Court, as entered on the docket of the Court, that has not been reversed, stayed, modified, or amended, and as to which: (a) the time to appeal, seek review or rehearing, or petition for certiorari has expired and no timely filed

appeal or petition for review, rehearing, remand, or certiorari is pending; or (b) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought. The possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or other rules governing procedure in cases before the Court, may be filed with respect to such order shall not cause such order not to be a Final Order unless such motion actually been timely filed.

1.41.    **General Unsecured Claim** means any Claim that is not: (a) an Administrative, Priority Non-Tax Claim, or Priority Tax Claim; (b) a Secured Claim; (c) a Fee Claim; (d) a Convenience Claim; or (e) any Samsonite Rights.

1.42.    **Interest** means an equity security within the meaning of § 101(16) of the Bankruptcy Code, in the Debtor, including but not limited to a membership interest in the Debtor.

1.43.    **"Less Favorable Treatment"** means (i) treatment that provides less consideration to the holder of a Claim or Interest than such holder would otherwise have been entitled to receive, and/or (ii) treatment that enables the Debtor or the Liquidation Trustee to retain or receive more than the Debtor or the Liquidation Trustee would otherwise have been entitled to receive.

1.44.    **Lien** means a lien within the meaning of § 101(37) of the Bankruptcy Code, including but not limited to a lien, mortgage, deed of trust, security interest, statutory lien, common law lien, bailment, or right of setoff.

1.45.    **Litigation Claim** means any claim, right, or cause of action of the Debtor including but not limited to a claim, right, or cause of action accruing or incorporated under Chapter 5 of the Bankruptcy Code which may be asserted by or on behalf of the Debtor, whether known or unknown, in law, equity or otherwise, including but not limited to (a) a claim, right, or cause of action accruing under § 547 of the Bankruptcy Code, or under § 550 of the Bankruptcy Code to recover a transfer avoided under § 547 of the Bankruptcy Code, (b) any claims the Debtor may have against current or former officers, directors, insiders, employees, members, managers, agents, representatives, attorneys, accountants, advisors, professionals (in such capacity) and their successors and assigns other than claims released hereby; and (c) any fraudulent conveyance or fraudulent transfer claims the Debtor may have, pursuant to §§ 544, 548 and/or 550 of the Bankruptcy Code or applicable non-bankruptcy law.  As used in this definition, the term Debtor includes the Estate.

1.46.    **Liquidation Trust** means the trust created pursuant to Section 6.1 herein.

1.47.    **Liquidation Trust Agreement** means the agreement establishing the terms and conditions of the Liquidation Trust, which shall be in form and substance substantially identical in all material respects to (i) the agreement annexed hereto; (ii) annexed at any time prior to confirmation of the Plan; or (iii) annexed to, or otherwise adopted or approved by, the Confirmation Order.

#10973797 v2

1.48.     **Liquidation Trustee** means the trustee of the Liquidation Trust, as initially designated in Section 6.3 of this Plan, and thereafter in the Liquidation Trust Agreement or any amendment(s) thereto.

1.49.     **Net Proceeds** means the Cash consideration received by or on behalf of the Debtor or the Liquidation Trustee from the sale or transfer of an asset (including but not limited to a Litigation Claim) or the conversion of such asset to Cash in some other manner, whether occurring prior to, on, or after the Effective Date, less the expenses attributable to or actually incurred on account of such sale, transfer, collection or conversion, including costs of curing defaults under executory contracts or unexpired leases that are assigned, paying personal property taxes or other taxes accruing in connection with such sale, transfer, or conversion of such property, brokerage fees and commissions, collection costs, attorneys' fees and expenses, and any applicable taxes or other claims of any governmental authority in connection with such property and any escrows or accounts established to hold funds for purchase price adjustments, indemnification claims, or other purposes in connection with such sale, transfer or collection.

1.50.     **Person** means any individual, corporation, partnership, association, organization, joint stock company, joint venture, estate, trust, governmental unit or any political subdivision thereof, official committee or any other entity.

1.51.     **Petition Date** means March 5, 2009.

1.52.     **Plan** means this Debtor's Plan of Liquidation, together with any amendments or modifications hereto as may be filed hereafter in accordance with the terms of the Plan, the Bankruptcy Code and other applicable law.

1.53.     **Priority Non-Tax Claim** means any Claim entitled, but only to the extent entitled, to priority pursuant to § 507(a) of the Bankruptcy Code, other than: (a) an Administrative Claim; (b) a Priority Tax Claim; (c) a Fee Claim; or (d) any Samsonite Rights.

1.54.     **Priority Tax Claim** means a Claim entitled, but only to the extent entitled, to priority pursuant to § 507(a)(8) of the Bankruptcy Code.

1.55.     **Ratable, Ratably, or Ratable Share** means a number (expressed as a percentage) equal to the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of: (a) Allowed Claims plus (b) Disputed Claims (in their aggregate face amount) in such Class as of any date of determination.

1.56.     **Released Parties** means and includes the Debtor, the Estate, the Liquidation Trustee, Samsonite and any present and former officers, directors, employees, members, managers, agents, representatives, attorneys, accountants, advisors, financial advisors, employee benefit plan fiduciaries, employee benefit plan administrators, and professionals (in such capacity) of the Liquidation Trustee, of the Estate (but not of the Debtor, except to the extent also of the Estate), and/or of Samsonite.

1.57.     **Sale Order** means each and every order approving an Asset Sale, including but not limited to that certain Order Approving Sale Of Substantially All Of The Debtor's Assets Free And Clear Of Liens, Claims, Interests, And Other Encumbrances, Approving Assumption And

Assignment, Or In The Alternative Rejection, Of Executory Contracts And Unexpired Leases, And Granting Related Relief entered by the Court in the Chapter 11 Case at Docket No. 81 (the "Trademark Sale Order").

1.58.     **Samsonite** means and includes Samsonite Corporation and all of its affiliates, predecessors, successors, assigns, and divisions, other than (to the extent it otherwise meets this definition) the Debtor.

1.59.     **Samsonite Rights** means all rights of Samsonite in or against the Debtor as of the Petition Date, including but not limited to all Claims against the Debtor of any kind or nature (**"Samsonite Claims"**) and any Interests in the Debtor of any kind or nature (**"Samsonite Interests"**).

1.60.     **Schedules of Assets and Liabilities** means the Debtor's schedules of assets and liabilities filed with the Court pursuant to §§ 521(1) and 1106(a)(2) of the Bankruptcy Code, as the same may have been amended.

1.61.     **Secured Claim** means, pursuant to § 506 of the Bankruptcy Code, that portion of a Claim that is secured by a valid, perfected, and enforceable security interest, lien, claim, interest, mortgage, or other encumbrance, that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title, or interest of the Debtor or the Estate, to the extent of the value of the holder's interest in such property as of the relevant determination date. "Secured Claim" also includes any Claim to the extent that it is subject to a right of setoff under applicable law, but only to the extent enforceable and unavoidable in accordance with §§ 506(a) and 553 of the Bankruptcy Code. "Secured Claim" shall not include for voting or Distribution purposes any Claim that has been or will be paid in connection with the cure of defaults under an assumed executory contract or unexpired lease under section § 365 of the Bankruptcy Code.  For avoidance of doubt, "Secured Claims" does not include a Claim secured by a Lien which was not perfected, improperly perfected, or purportedly perfected by a transaction that was void or voidable, such Claim being included for all purposes within the scope of "General Unsecured Claim."  Notwithstanding anything in the Plan to the contrary, "Secured Claim" does not include any Claim to enforce any Samsonite Rights.

1.62.     **Unclaimed Property** means any Cash or other distributable property unclaimed on or after a Distribution Date including but not limited to: (a) checks (and the funds represented thereby) mailed to a Distribution Address and returned as undeliverable without a proper forwarding address; (b) funds for uncashed checks; and (c) checks (and the funds represented thereby) not mailed or delivered because no Distribution Address to mail or deliver such property was available, notwithstanding efforts by the Debtor or the Liquidation Trustee to locate such address which were reasonable under the circumstances.

1.63.     **United States Trustee** means the Office of the United States Trustee for the District of Delaware.

1.64.     **Wind-Down Reserve** means a reserve to be established on the Effective Date by the Liquidation Trustee containing sufficient Cash and other assets which the Liquidation Trustee, in his or her sole discretion, believes is necessary or appropriate to fund the winding up

of the affairs of the Debtor, the administering the Plan and the Liquidation Trust, and the winding up of the affairs of the Liquidation Trust. After the Effective Date, the Wind-Down Reserve shall be supplemented to the extent considered necessary or desirable by the Liquidation Trustee with proceeds of any collection, sale, liquidation, or other disposition of any non-Cash property of the Debtor or the Liquidation Trust existing on or created after the Effective Date, including Litigation Claims.

## ARTICLE II - TREATMENT OF ADMINISTRATIVE CLAIMS, FEE CLAIMS AND PRIORITY TAX CLAIMS

Administrative Claims, Fee Claims, and Priority Tax Claims have not been classified and are excluded from the Classes set forth in Article III in accordance with § 1123(a)(1) of the Bankruptcy Code. The following provisions shall govern their treatment.

### 2.1 Administrative Claims

Unless otherwise provided for herein, each holder of an Allowed Administrative Claim shall be paid 100% of the unpaid allowed amount of such Administrative Claim in Cash on or as soon as reasonably practicable after the Distribution Date. Notwithstanding the immediately preceding sentence: (i) any Administrative Claim for goods sold or services rendered representing liabilities incurred by the Debtor in the ordinary course of business during the Chapter 11 Case involving trade, service, or vendor Claims, subject to compliance with any applicable bar date, may be paid by the Debtor or the Liquidation Trustee in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto even if after the Effective Date; and (ii) Administrative Claims of the United States Trustee for fees pursuant to 28 U.S.C. § 1930(a)(6) shall be paid in accordance with the applicable schedule for payment of such fees. Notwithstanding the foregoing, the holder of an Allowed Administrative Claim may receive such other Less Favorable Treatment as may be agreed upon by such holder and the Debtor or the Liquidation Trustee, as applicable.

### 2.2 Bar Date for Administrative Claims

(a) Except as otherwise provided herein, applications for allowance of Administrative Claims (other than Fee Claims) arising before the Effective Date must be filed with the Court, with copies to the parties listed in Section 12.13, within 30 days after the Confirmation Date. Except as otherwise agreed to by the Debtor or the Liquidation Trustee, any Person that fails to file such an application with the Court within that time shall be forever barred from asserting such Administrative Claim against the Debtor, the Estate, the Liquidation Trust, or their property, or commencing or continuing any action, employment of process, or act to collect, offset, or recover such Administrative Claim, except as otherwise agreed by the Debtor or the Liquidation Trustee.

(b) Notwithstanding the foregoing, on the Confirmation Date, but subject to the occurrence of the Effective Date, the Persons listed on **Exhibit 1-A** of this Plan shall be deemed to hold Allowed Administrative Claims in the respective amounts stated thereupon, except that in the event any such Person(s) file(s) a timely application for allowance of an Administrative

-10-

Claim in any amount, such Person(s) shall not be deemed to hold any Allowed Administrative Claims until further order of the Court.

2.3     **Fee Claims**

Each holder of an Allowed Fee Claim through the Effective Date shall receive 100% of the unpaid allowed amount of such Claim in Cash on or as soon as reasonably practicable after the Distribution Date.

2.4     **Bar Date for Fee Claims**

All applications for payment of Fee Claims through the Effective Date must be filed with the Court within 60 days after the Effective Date.  Except as otherwise agreed to by the Debtor or the Liquidation Trustee, any person that fails to file such an application on or before such date shall be forever barred from asserting such Fee Claim against the Debtor, the Estate, the Liquidation Trust, or their property, and the holder thereof shall be permanently enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Fee Claim.

2.5     **Priority Tax Claims**

Each holder of an Allowed Priority Tax Claim shall be paid 100% of the unpaid amount of such Allowed Claim in Cash on or as soon as reasonably practicable after the Distribution Date. Any claim or demand for a penalty relating to any Priority Tax Claim shall be deemed disallowed as of the Effective Date, and the holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from the Released Parties, the Debtor's current, former, or future directors and officers, the Debtor's successor(s), the Liquidation Trust, the Buyer, or their respective property. Notwithstanding the foregoing, the holder of an Allowed Priority Tax Claim may receive such other Less Favorable Treatment as may be agreed upon by the claimant and the Debtor or the Liquidation Trustee, as applicable.

## ARTICLE III – SUMMARY OF CLASSES AND GENERAL RULES

In accordance with § 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Fee Claims, and Priority Tax Claims, as described in Article II, have not been classified and thus are excluded from the Classes that follow. The following table designates the Classes of Claims and specifies which of those Classes are (i) impaired or unimpaired by this Plan, and (ii) entitled to vote to accept or reject this Plan in accordance with § 1126 of the Bankruptcy Code or deemed to reject this Plan.

#10973797 v2

### 3.1 Classes

| Class | Claims/Interests in Class | Impairment | Entitlement To Vote |
|-------|---------------------------|------------|---------------------|
| Class 1 | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 2 | Samsonite Rights | Impaired | Yes |
| Class 3 | Secured Claims | Unimpaired | No (deemed to accept) |
| Class 4 | Convenience Claims | Impaired | Yes |
| Class 5 | General Unsecured Claims | Impaired | Yes |
| Class 6 | Interests | Impaired | No (deemed to reject) |

### 3.2 General Rules of Classification

Generally, a Claim is classified in a particular Class for voting and distribution purposes only to the extent the Claim has not been paid, released, or otherwise satisfied and qualifies within the description of that Class, and is classified in another Class or Classes to the extent any remainder of the Claim qualifies within the description of such other Class or Classes except as expressly provided. For voting and distribution purposes, a holder of more than one Claim in a Class shall be deemed to have a single Claim in such Class.

## ARTICLE IV – CLASSIFICATION OF CLAIMS AND INTERESTS AND TREATMENT THEREOF

### 4.1 Priority Non-Tax Claims (Class 1)

Class 1 consists of all Priority Non-Tax Claims. Each holder of an Allowed Class 1 Claim shall be paid 100% of the unpaid amount of such Allowed Claim in Cash on or as soon as reasonably practicable after the Distribution Date. Notwithstanding the foregoing, the holder of an Allowed Priority Non-Tax Claim may receive such other Less Favorable Treatment as may be agreed upon by the claimant and the Liquidation Trustee.

### 4.2 Samsonite Claims and Interests (Class 2).

Class 2 consists of all Samsonite Rights. On account of Allowed Samsonite Claims and Samsonite Interests, the holder(s) of the Samsonite Rights shall jointly and collectively receive a single aggregated payment of Cash in the amount of $800,000 on the Distribution Date. Notwithstanding any other rights conferred upon holders of Allowed Claims or Interests under the Plan, the Confirmation Order, or the Liquidation Trust Agreement, the treatment of any and all Samsonite Rights shall be governed exclusively under Class 2, and the holder(s) of any Samsonite Rights shall have no other rights, remedies, or claims against, or interests in, the Debtor, the Estate, the Liquidation Trust, or their property, on account of any Samsonite Rights except as members of Class 2. Any and all Liens held or asserted by Samsonite upon assets of the Debtor, the Estate, or the Liquidation Trust shall be deemed released and extinguished upon payment of Cash in the amount of $800,000 to Samsonite. Notwithstanding the foregoing, the holder(s) of Class 2 rights may receive such other Less Favorable Treatment as may be agreed to by such holder(s) and the Debtor or the Liquidation Trustee, as applicable.

#10973797 v2

4.3     **Secured Claims (Class 3)**

Class 3 consists of holders of Allowed Secured Claims (for avoidance of doubt, Class 3 does not consist of any Samsonite Rights). Subject to the provisions of §§ 502(b)(3) and 506(d) of the Bankruptcy Code, each holder of an Allowed Class 3 Claim shall receive, at the Liquidation Trustee's option and to the extent such Claim is secured by collateral in the possession of the Liquidation Trustee, any one or more of the following: (a) 100% of the Net Proceeds from the sale of the relevant collateral, in whole or in part, up to the unpaid Allowed amount of such Claim; (b) abandonment of the relevant collateral, in whole or in part; (c) such alternative treatment as leaves unaltered the legal, equitable and contractual rights of the holder of such Allowed Secured Claim. Such Distribution shall be made on or as soon as reasonably practicable after the relevant Distribution Date (subject, if applicable, to the Liquidation Trustee's receipt of the Net Proceeds from the sale of any relevant collateral). To the extent a Claim is partially an Allowed Secured Claim based on an offset right and partially an Allowed Claim of another type, such Secured Claim shall be deemed to have been (x) set off (and thus no longer due and payable) only to the extent of the Allowed amount of the allowed, liquidated, non-disputed, non-contingent claim owing to the Debtor, and (y) a Claim classified in another relevant Class for any excess of such Claim over the amount so set off. If a Claim is fully a Secured Claim based on an offset right, the allowance of such Claim shall not affect any obligations or liabilities due and payable (at such time) to the relevant Debtor that are in an amount in excess of the amount validly offset and the payment, in full and in cash, of all amounts due and owing as of the Effective Date to such Debtor, and the turnover of any property of such Debtor held by such claimant on account of any unliquidated, disputed or contingent right of setoff shall be a precondition of the allowance of such Secured Claim. Notwithstanding the foregoing, the holder of an Allowed Secured Claim may receive such other Less Favorable Treatment as may be agreed to by such holder and the Liquidation Trustee. Any Allowed Claim based on any deficiency claim by a holder of an Allowed Secured Claim shall become, and shall be treated for all purposes under this Plan, as an Allowed General Unsecured Claim.

Upon such holder's receipt of any Distribution on account of the sale of collateral, such holder's Lien in such collateral shall be deemed released and extinguished.

4.4     **Convenience Claims (Class 4)**

Class 4 consists of all holders of Convenience Claims (for avoidance of doubt, Class 4 does not consist of any Samsonite Rights). On or as soon as reasonably practicable after the initial Distribution Date, each holder of an Allowed Claim in Class 4 shall be paid 15% of its Allowed Convenience Claim in Cash in full satisfaction of such Claim. Such Distribution shall be the sole Distribution to which holders of Claims in Class 4 shall be entitled.

4.5     **General Unsecured Claims (Class 5)**

Class 5 consists of all General Unsecured Claims other than Convenience Claims (for avoidance of doubt, Class 5 does not consist of any Samsonite Rights). Each holder of an Allowed Claim in Class 5 shall receive: (i) a Ratable share of beneficial interest in the Liquidation Trust on the Effective Date; and (ii) on each Distribution Record Date, a Ratable share of all beneficial interest in the Liquidation Trust that had been held in reserve for the

-13-

benefit of any Disputed Claim(s) that subsequently became (but only to the extent that they became) Disallowed Claims. Notwithstanding the foregoing, the holder of an Allowed Class 5 Claim may receive such other Less Favorable Treatment as may be agreed by the holder of such Claim and the Liquidation Trustee.

### 4.6 Interests (Class 6)

Class 6 consists of all Interest in the Debtor (for avoidance of doubt, Class 6 does not consist of any Samsonite Rights). Each holder of a Class 6 Interest in the Debtor shall receive a Ratable Share in all Net Proceeds of the Liquidation Trust upon its dissolution, so long as all Allowed Claims under Class 2 and Class 5 are paid in full. Notwithstanding any remote resulting interest in the Liquidation Trust, the Liquidation Trust Agreement shall not confer any power or standing upon the holders of Class 6 Interests (in their capacity as holders of Class 6 Interests) to enforce any rights or fiduciary duties against the Liquidation Trustee. Class 6 is treated as receiving no distribution under the Plan and is therefore deemed to reject the Plan.

## ARTICLE V - ACCEPTANCE OR REJECTION OF PLAN

### 5.1 Voting of Claims

Each holder of an Allowed Claim classified in Class 2, Class 4, and Class 5 (and only such holders) shall be entitled to vote to accept or reject this Plan.

### 5.2 Acceptance by a Class

Consistent with § 1126(c) of the Bankruptcy Code and except as provided for in § 1126(e) of the Bankruptcy Code, a Class shall have accepted this Plan if it is accepted by at least two-thirds in dollar amount, and more than one half in number, of the holders of Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

### 5.3 Presumed Acceptance of Plan

Pursuant to § 1126(f) of the Bankruptcy Code, any Class that is unimpaired under a plan is conclusively presumed to accept a plan. Accordingly, under this Plan, Class 1 and Class 3 are unimpaired and conclusively presumed to accept the Plan.

### 5.4 Presumed Rejection of Plan

In accordance with § 1126(g) of the Bankruptcy Code, any Class that is projected to receive no distribution under a plan is conclusively presumed to reject the plan. Accordingly, Class 6 is conclusively presumed to reject this Plan and the votes of such holders will not be solicited with respect to their Claims or Interests in that Class.

### 5.5 Cramdown

With respect to Class 6, the Debtor is seeking confirmation of the Plan pursuant to § 1129(b) of the Bankruptcy Code. To the extent that any other impaired Class(es) vote(s) to

-14-

reject the Plan, the Debtor reserves the right to seek confirmation pursuant to § 1129(b) of the Bankruptcy Code with respect to such Class(es) as well.

## ARTICLE VI - IMPLEMENTATION OF THE PLAN

In addition to the provisions set forth elsewhere in this Plan, the following shall constitute the means of execution and implementation of the Plan.

### 6.1    Liquidation Trust

(a)    **Creation of Liquidation Trust.** As of the Effective Date, the Liquidation Trust shall be deemed created and named the "LT Liquidation Trust."  To effectuate the creation of the Liquidation Trust, all assets of the Debtor and the Estate existing as of the Effective Date shall be deemed transferred to the Liquidation Trustee, in trust for the beneficiaries identified in the Plan, the Confirmation Order, and the Liquidation Trust Agreement, on the Effective Date in accordance with the terms set forth hereinbelow. The Liquidation Trust shall operate under the provisions of the Liquidation Trust Agreement.

After the Effective Date, the Debtor shall have no liability to holders of Claims or Interests other than as provided for in the Plan. The Plan will be administered and actions will be taken in the name of the Debtor or the Liquidation Trust, as appropriate, through the Liquidation Trustee.

(b)    **Transfers to the Liquidation Trust.** On the Effective Date, the Debtor and the Estate shall be deemed to have transferred and/or assigned all of their assets, including but not limited to (i) Cash and accounts, including but not limited to all monies held in escrow or separate segregated accounts during the pendency of the Chapter 11 Case, (ii) Litigation Claims, and (iii) any and all other interests, rights, claims, defenses, and causes of action of the Debtor or the Estate, to the beneficiaries of the Liquidation Trust identified in the Plan, the Confirmation Order, and the Liquidation Trust Agreement, ratably to their respective interests in the Liquidation Trust, immediately followed by a deemed transfer by such beneficiaries to the Liquidation Trustee in trust for their benefit.  Thereafter, such transferred assets shall be deemed property of the Liquidation Trust free and clear of all Claims, Liens, and contractually imposed restrictions, except for the rights to Distribution afforded to holders of Claims and Interests under the Plan. Any assets received by the Debtor after the Effective Date shall be treated, for all purposes, as if they had been received by the Debtor immediately prior to the Effective Date.

(c)    **Creation of Reserve Within Liquidation Trust.** As of the Effective Date, and upon receipt of the assets transferred pursuant to Section 6.1(b) hereof, the Liquidation Trustee shall establish the Wind-Down Reserve and use the transferred assets to fund it in accordance with the terms hereof.

### 6.2    Powers

(a)    **Directors, Officers and Employees.** On the Effective Date, the authority, power, and incumbency of the persons then acting as directors of the Debtor shall be terminated and such directors shall be deemed to have resigned. Each officer and any employee in the

employment of the Debtor as of the Effective Date shall automatically on the Effective Date cease to be officers and employees of the Debtor.

(b) **Succession by Liquidation Trustee.** The Liquidation Trustee shall succeed to all contractual, statutory, and other powers applicable to the Debtor's officers, directors and shareholders, and the Debtor shall be authorized to be (and, by the conclusion of the winding up of the Debtor's affairs, shall be) deemed dissolved.

6.3     **Liquidation Trustee**

Initially, Maurice Dembsky (the "Initial Liquidation Trustee") shall be the Liquidation Trustee. The salient terms of the Liquidation Trustee's employment, including the Liquidation Trustee's duties and compensation, to the extent not set forth in the Plan or the Confirmation Order, shall be set forth in the Liquidation Trust Agreement. In general, the Liquidation Trustee shall be treated as a "trustee acting under title 11" for purposes of 31 U.S.C. § 3713(b), the exclusive trustee of the Liquidation Trust for purposes of 26 U.S.C. § 6012(b)(3), and the "representative of the estate" appointed pursuant to § 1123(b)(3)(B) of the Bankruptcy Code. The Liquidation Trustee shall have limited fiduciary duties to the beneficiaries of the Liquidation Trust, but only to the extent provided in the Liquidation Trust Agreement. The Liquidation Trust Agreement shall specify the terms and conditions of the Liquidation Trustee's compensation, responsibilities, and powers. In the event a successor Liquidation Trustee is appointed, the Court may approve an appropriate severance payment which the Court deems appropriate. It shall not be a prerequisite to service as a Liquidation Trustee that a Person be a disinterested person as defined by § 101(14) of the Bankruptcy Code.

The Liquidation Trust Agreement may include a provision authorizing the Initial Liquidation Trustee to receive a severance payment not to exceed $20,000 in the event that he remains the Liquidation Trustee until the Liquidation Trust makes a Final Distribution, the Liquidation Trust is successfully and properly dissolved, and the Chapter 11 Case is properly closed.

The duties and powers of the Liquidation Trustee shall include, without limitation, the following:

(a) To exercise all powers and authority that may be or could have been exercised, commence all proceedings that may be or could have been commenced, and take all actions that may be or could have been taken by any officer, director, or shareholder of the Debtor with like effect as if authorized, exercised, and taken by unanimous action of such officers, director's and shareholders, including but not limited to amendment of the certificates of incorporation and by-laws of the Debtor and the dissolution of the Debtor;

(b) To maintain escrows and other accounts, make Distributions, and take other actions consistent with the Plan and the implementation hereof, including but not limited to the establishment, re-evaluation, adjustment, and maintenance of appropriate reserves, in the name of the Debtor or the Liquidation Trust;

#10973797 v2

(c)     Subject to the applicable provisions of the Plan and the Confirmation Order, to collect and liquidate all assets of the Estate pursuant to the Plan and to wind up the affairs of the Debtor;

(d)     To object to any Claims (Disputed or otherwise), and to defend, compromise, and/or settle any Claims prior to objection without supervision or approval of the Court, free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the Court, and the guidelines and requirements of the United States Trustee, other than those restrictions expressly imposed by the Plan or the Confirmation Order, and/or to seek Court approval for any Claims settlements, to the extent that the Litigation Trustee deems necessary or appropriate in the Liquidation Trustee's sole discretion;

(e)     To retain, without further approval of the Court, professionals, employees and consultants on behalf of the Liquidation Trust and to pay, from the Wind-Down Reserve, the charges incurred by the Liquidation Trust on or after the Effective Date for services of professionals, disbursements, expenses, or related support services relating to the winding down of the Debtor, the implementation of the Plan, and/or the administration and winding down of the Liquidation Trust, without further approval of the Court;

(f)     To cause, on behalf of the Liquidation Trust, the Debtor, and the Estate, all necessary tax returns and all other appropriate or necessary documents related to municipal, state, federal or other tax laws to be prepared or filed;

(g)     To make Distributions to beneficiaries of the Liquidation Trust provided for under or contemplated by the Plan;

(h)     To invest Cash in accordance with § 6.6 of the Plan or as otherwise permitted by a Final Order of the Court and as deemed appropriate by the Liquidation Trustee;

(i)     To collect any accounts receivable or other claims of the Debtor or the Estate not otherwise disposed of pursuant to the Plan;

(j)     To enter into any agreement or execute any document required by or consistent with the Plan and perform all of the obligations of the Debtor or the Liquidation Trustee thereunder;

(k)     To abandon in any commercially reasonable manner, including but not limited to abandonment or donation to a charitable organization of the Liquidation Trustee's choice, any assets that the Liquidation Trustee concludes are of no benefit to beneficiaries of the Liquidation Trust, or, at the conclusion of the Chapter 11 Case, are determined to be too impractical to distribute;

(l)     To prosecute and/or settle Litigation Claims, if any, participate in or initiate any proceeding before the Court or any other court of appropriate jurisdiction, participate as a party or otherwise in any administrative, arbitrative or other nonjudicial proceeding, litigate or settle such Litigation Claims on behalf of the Liquidation Trust, and/or pursue to settlement or judgment such actions;

(m)   To utilize trust assets to purchase or create and carry all appropriate insurance policies and pay all insurance premiums and costs the Liquidation Trustee deems necessary or advisable to insure the acts and omissions of the Liquidation Trustee and/or the value of the Liquidation Trust's assets;

(n)   To implement and/or enforce all provisions of the Plan and the Confirmation Order;

(o)   To maintain appropriate books and records;

(p)   To collect and liquidate all assets of the Debtor and the Estate pursuant to the Plan and administer the winding-up of the affairs of the Debtor, including but not limited to causing the dissolution of the Debtor and seeking closure of the Chapter 11 Case;

(q)   To pay fees incurred pursuant to 28 U.S.C. § 1930(a)(6) and to file with the Court and serve on the United States Trustee periodic financial reports until such time as a final decree is entered closing the Chapter 11 Case, the Chapter 11 Case is converted or dismissed, or the Court orders otherwise;

(r)   To pay, from assets of the Liquidation Trust, the compensation and other consideration owing to the Liquidation Trustee, without approval of the Court; and

(s)   To do all other acts or things not inconsistent with the provisions of the Plan or the Confirmation Order that the Liquidation Trustee deems necessary or appropriate with respect to implementing the Plan and/or maximizing the value of the Liquidating Trust for the benefit of its beneficiaries.

6.4   **Dissolution of Corporate Entity**

On the Effective Date, the Liquidation Trustee shall, in accordance with applicable law, be issued a 100% Interest in the Debtor and thereafter shall be, and have all the powers of, the sole member, shareholder, officer, manager, and director of the Debtor, replacing the existing members, shareholders, officers, managers, and directors of the Debtor, and all other shares of any class of Interests of the Debtor shall be deemed cancelled.   Within the respective times determined by the Liquidation Trustee as necessary or appropriate under the circumstances (including with respect to the pursuit of causes of action in the name of the Estate), the Debtor shall be dissolved without any further action by the former members, shareholders, officers, managers, and directors of the Debtor. The Liquidation Trustee may, in his or her discretion, file all necessary certificates of dissolution and take any other actions necessary or appropriate to effect the dissolution of the Debtor under the state law where the Debtor was organized, which the Liquidation Trustee may do without further action of the Debtor's members, shareholders, officers, managers, and directors. All applicable regulatory or governmental agencies shall accept any certificates of dissolution or other papers filed by the Liquidation Trustee on behalf of the Debtor and shall take all steps necessary to allow and effect the prompt dissolution of the Debtor as provided herein, without the payment of any fee, tax, or charge and without need for the filing of reports or certificates, except as the Liquidation Trustee may determine in his or her sole discretion to be necessary or appropriate.

6.5 **Investments**

All Cash held by the Liquidation Trustee shall be invested as deemed appropriate by the Liquidation Trustee and need not be invested in accordance with § 345 of the Bankruptcy Code.

6.6 **Resignation, Death or Removal of Liquidation Trustee**

The Liquidation Trustee may resign at any time upon 30 days' written notice by filing a notice of resignation with the Court. For cause, the Court may remove or replace the Liquidation Trustee. In the event that the Person serving as Liquidation Trustee resigns, dies, or is removed from that office before the affairs of the Liquidation Trust and/or the Debtor are fully wound up, the Court shall appoint a new Person to serve as Liquidation Trustee under such terms as the Court deems appropriate. No successor Liquidation Trustee shall in any event have any liability or responsibility for the acts or omissions of his or her predecessors. Every successor Liquidation Trustee shall execute, acknowledge, and file with the Court a notice of such appointment hereunder, and thereupon such successor Liquidation Trustee, without any further act other than as provided in the Liquidation Trust Agreement, shall become fully vested with all of the rights, powers, duties, and obligations of the office of Liquidation Trustee.

6.7 **Tax Treatment of Liquidation Trust**

The Liquidation Trust will be treated as a "liquidating trust" within the meaning of § 301.7701-4(d) of the Treasury Regulations. The transfer of the Debtor and the Estate remaining assets to the Liquidation Trust shall be treated as a transfer to the beneficiaries of the Liquidation Trust for all purposes of the Internal Revenue Code (*e.g.,* 26 U.S.C. §§ 61(a)(12), 483, 1001, 1012 and 1274) followed by a deemed transfer by such beneficiaries to the Liquidation Trust. The Liquidation Trust shall be treated as a grantor trust, and the beneficiaries of the Liquidation Trust shall be treated as the grantors and deemed owners of the Liquidation Trust. To the extent valuation of the transferred property to the Liquidation Trust is required under applicable law, the Liquidation Trustee shall value the transferred property and notify in writing the beneficiaries of the Liquidation Trust of such valuations. The assets transferred to the Liquidation Trust shall be valued consistently by the Liquidation Trustee and the beneficiaries, and these valuations will be used for all federal income tax purposes.

6.8 **Transfer of Beneficial Interests in the Liquidation Trust**

A beneficial interest in the Liquidation Trust shall not be represented by certificates and shall be transferable, in whole or in any part, (i) by written assignment, (ii) executed by the holder of such interest, (iii) notarized or verified in accordance with applicable non-bankruptcy law, (iv) filed (in its original form) with the Court within 10 days after execution, (iv) a copy of which served upon the Liquidation Trustee and the Liquidation Trustee's counsel, and (v) disclosed by a notice applicable to the transfer of claims pursuant to Fed. R. Bankr. P. 3001(e) (a "Transfer Notice"), which shall be served by mail by the Liquidation Trustee or the Liquidation Trustee's counsel. A $85.00 fee, which shall accompany the copy served upon the Liquidation Trustee as described above, shall be paid by the transferee of such interest for the Liquidation Trustee's expenses in serving the Transfer Notice. The transfer of such interest shall become effective on the 21st day after the mailing of the Transfer Notice, unless an objection to the

-19-

transfer is filed before that date, in which case the Court shall determine the effectiveness, and the effective date, of the transfer. The Liquidation Trustee shall not be required to redirect any Distribution to a purported transferee whose transfer has not become effective as of the applicable Distribution Record Date.

6.9    **Funding of the Plan**

(a)    **Source of Distributions.** Distributions to be made pursuant to the Plan will be funded by Cash held by the Debtor and/or the Liquidation Trust on each applicable Distribution Date. Distributions of Cash from the Liquidation Trust to its beneficiaries, and all other expenditures of the Liquidation Trust, shall be funded from (i) Cash transferred by the Debtor received from the Sale(s) of the Debtor's assets; (ii) Cash transferred by the Debtor received from sales in the ordinary course of business; (iii) accounts receivable of the Debtor; (iv) net proceeds of Litigation Claims that the Liquidation Trustee deems appropriate to pursue; (v) any other assets acquired by the Liquidation Trust; and (vi) any other assets acquired by the Debtor after the Effective Date.

(b)    **Reserves.** To the extent not otherwise provided for herein or ordered by the Court, the Liquidation Trustee shall estimate appropriate reserves of Cash to be set aside in order to pay or reserve for accrued expenses and for the payment of prospective expenses and liabilities of the Estate and the Liquidation Trust. The Liquidation Trust shall indemnify the Liquidation Trustee for, and hold the Liquidation Trustee harmless from, any shortfall in the foregoing estimation, except in the event of willful or reckless conduct.

(c)    **No Segregation of Funds.** Notwithstanding any contrary provision contained herein, the Liquidation Trustee shall not be obligated to physically segregate and maintain separate accounts for reserves, for the Distribution Fund. Separate reserves and funds may be merely bookkeeping entries or accounting methodologies, which may be revised from time to time, to enable the Liquidation Trustee to determine Available Cash, reserves, and amounts to be paid to parties in interest.

6.10    **Litigation Claims**

All Litigation Claims shall be retained by the Estate upon the Confirmation Date, as more fully described in § 6.18 hereof. Before the Effective Date, the Debtor may prosecute any or all Litigation Claims, and the Debtor may settle any Litigation Claims with Court approval, provided, however, that the Debtor may not assert, commence or prosecute a Litigation Claim against Samsonite. On the Effective Date, all remaining Litigation Claims shall be deemed transferred to the Liquidation Trust and may thereafter be prosecuted, settled, or abandoned with or without Court approval by the Liquidation Trustee. Notwithstanding anything to the contrary herein, no Distribution shall be made to the holder of any Claim, including by way of setoff or recoupment by such claimant, if the Debtor or the Liquidation Trustee has taken action to recover, or given notice to the applicable party of intent to take such action, on a Litigation Claim against the holder of such Claim (or the direct or indirect transferor to, or transferee of, such holder), until such Litigation Claim is resolved by Final Order or otherwise in accordance with this section.

6.11    **Distribution Fund**

(a)    **Funding of Distribution Fund.** After all payments have been made or properly reserved for holders of Administrative Claims, Priority Non-Tax Claims, Priority Tax Claims, Fee Claims, Convenience Claims, Secured Claims, Class 2 Claims, and the Wind-Down Reserve, and/or upon the reasonable determination of the Liquidation Trustee that the funds in any other reserves established by the Liquidation Trustee exceed the amounts necessary to make such payments in full, the remaining Available Cash shall be allocated to the Distribution Fund.

(b)    **Allocation of Available Cash.** Distribution of Cash, if any, to holders of beneficial interests in the Liquidation Trust shall be made solely from the Distribution Fund.

6.12    **Exemption from Certain Transfer Taxes**

Pursuant to § 1146(c) of the Bankruptcy Code: (i) the issuance, transfer or exchange of any securities, instruments or documents; (ii) the creation of any other lien, mortgage, deed of trust or other security interest; or (iii) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of or in connection with, the Plan or the sale of any assets of the Debtor or the Liquidation Trustee, including any deeds, bills of sale or assignments executed in connection with the Plan or at any time after the Confirmation Date, shall not be subject to any stamp tax, transfer tax, intangible tax, recording fee, or similar tax, charge, or expense to the fullest extent provided for under § 1146(c) of the Bankruptcy Code.  All sales, leases, and other transfers of assets by or on behalf of the Debtor during the Chapter 11 Case were contemplated under the Plan and shall be construed to have been made under this Plan.  Without limitation, the foregoing shall include the Trademark Sale Order.  All orders approving the sale, lease, or other transfers of assets during the Chapter 11 Case shall be deemed preliminary approval of same, and the Confirmation Order shall be deemed final approval of all such sales, leases, and transfers.

6.13    **Employee Programs**

Except as otherwise agreed by the Liquidation Trustee, from and after the Effective Date, to the extent not earlier terminated in accordance with their terms, all of the Debtor's employee programs, including but not limited to any retirement plans or agreements and health benefits and disability plans, shall be deemed terminated in accordance with their terms with no further action required by the Debtor or the Liquidation Trustee, and to the extent any of such employee programs constitute distinct executory contracts with individual employees or otherwise, such contracts shall be deemed rejected and terminated in accordance with Section 8.1 hereof. The Liquidation Trustee shall be authorized to take any actions and make payment of the actual amount, if any, required to terminate such programs and discharge all benefit liabilities to participants and beneficiaries of such programs, including but not limited to the termination of any 401(k) plan.

Notwithstanding the foregoing, the Debtor and/or the Liquidation Trustee may, in the Liquidation Trustee's sole discretion, continue to administer the Debtor's medical and/or dental benefits plans, if in the Liquidation Trustee's opinion, such administration will not materially reduce the value of the Liquidation Trust.

#10973797 v2

### 6.14 Non-cash Property

All non-Cash assets or property of the Estate (other than collateral returned to the holder of a Secured Claim) not previously disposed of shall be deemed transferred to the Liquidation Trust on the Effective Date, and thereafter may be transferred, sold, or otherwise liquidated or, if appropriate in the judgment of the Liquidation Trustee, abandoned in any commercially reasonable manner, including but not limited to one or more charitable organizations designated by the Liquidation Trustee in respect of assets of inconsequential value, without further order of the Court. Notice of such sale, transfer, liquidation, or abandonment shall be provided to the holders, if any, of Secured Claims asserting Liens on such assets or property. Except in the case of willful misconduct or recklessness, and except as otherwise provided in the Liquidation Trust Agreement, no party in interest shall have a cause of action against the Debtor, its directors, officers, employees, consultants, members, managers, agents, representatives, attorneys, accountants, advisors, financial advisors, or professionals (in such capacity), the Liquidation Trustee, or the Liquidation Trust, its employees, consultants or professionals, arising from or related to: (a) the disposition of non-Cash assets or property in accordance with this Plan; or (b) the investment of any proceeds thereof by the Liquidation Trustee.

### 6.15 Withdrawal of the Plan

The Debtor reserves the right to revoke and withdraw, or to modify, the Plan in accordance with Section 12.1 hereof at any time before the Effective Date. If the Debtor revokes or withdraws the Plan, (a) nothing contained in the Plan shall be deemed to constitute a waiver or release of any claims by or against the Debtor or its Estate or to prejudice in any manner the rights of the Debtor or any Person in any further proceeding; and (b) the result shall be the same as if the Confirmation Order were not entered, the Plan were not filed, and the Effective Date had not occurred.

### 6.16 Release of Debtor Guaranty

Any guaranty(ies) executed by the Debtor shall be terminated and shall be released as of the Effective Date. To the extent, and only to the extent, that a Person was entitled to bring immediate action against the Debtor to recover a claim subject to any guaranty, indemnity, or such agreement (but for the automatic stay), such Person shall have a Claim for the payment of such claim. No Claim shall be allowed to the extent that the foregoing claim was contingent on the Petition Date if such Claim was an Unsecured Claim or on the Effective Date if such Claim was a Secured Claim.

### 6.17 Preservation of Insurance Policies

Nothing in the Plan, including any releases, shall diminish or impair the enforceability of any insurance policies that may cover any claim against the Debtor or any other Person other than the holder(s) of Class 2 Rights as of the Effective Date.

### 6.18 Retention of Actions and Defenses

(a)     Except as otherwise set forth herein, all claims, rights, defenses, offsets, recoupments, causes of action, actions in equity, or otherwise, whether arising under the

Bankruptcy Code or federal, state, or common law, which constitute property of the Estate within the meaning of § 541 of the Bankruptcy Code, as well as all claims, rights, defenses, offsets, recoupments, and causes of action arising under Chapter 5 of the Bankruptcy Code (including but not limited to Litigation Claims) with respect to the Debtor or its Estate, shall be and hereby are preserved for the benefit of the beneficiaries of the Liquidation Trust, and shall be and hereby are deemed to be among the assets transferred and assigned to the Liquidation Trust on the Effective Date. Prosecution and settlement of such claims, rights, defenses, and causes of action shall be the responsibility of the Liquidation Trustee exclusively, pursuant to the provisions of the Liquidation Trust Agreement, and the Liquidation Trustee shall or shall not pursue those claims, rights, defenses, and causes of action, as appropriate, in accordance with the Liquidation Trustee's sole judgment of what is in the best interests, and for the benefit of, the beneficiaries of the Liquidation Trust.

(b)     Notwithstanding anything in the Plan to the contrary, in consideration for the reduced recoveries to which Samsonite has agreed in connection with Distributions under this Plan, upon the Effective Date, any and all Litigation Claims against Samsonite, its officers, directors, managers, agents, attorneys, and other professionals (i) shall be deemed released, compromised, and extinguished; (ii) shall not be preserved for the benefit of the beneficiaries of the Liquidation Trust; and (iii) shall not be deemed to be among the assets transferred and assigned to the Liquidation Trust on the Effective Date.

## ARTICLE VII - DISTRIBUTIONS

### 7.1     Objections to and Estimation of Claims

The Liquidation Trustee may attempt to resolve consensually any disputes regarding the existence, validity, priority, security, or amount of any Claim. The Liquidation Trustee has the exclusive right to object to the allowance of any Claim and may file with the Court any other appropriate motion or adversary proceeding with respect thereto. All such objections may be litigated to Final Order; provided, however, that the Liquidation Trustee may compromise and settle with or without the approval of the Court, withdraw, or resolve by any other method approved by the Court (including but not limited to methods previously approved by the Court during the Chapter 11 Case), any objections to any Claim. All objections to Claims shall be filed within 120 days after the Effective Date. This deadline to object to Claims can be extended at the Liquidation Trustee's sole discretion by filing a notice with the Court stating the executed deadlines.

In addition, the Liquidation Trustee may, at any time, request that the Court estimate, pursuant to § 502(c) of the Bankruptcy Code, any Claim that is contingent or unliquidated, regardless of whether a Debtor has previously objected to such Claim or whether the Court has ruled on any such objection, and the Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Court estimates any contingent or unliquidated Claim, the amount of such estimation will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Court. If the estimated amount constitutes a maximum limitation on such Claim, the Liquidation Trustee may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of

the aforementioned Claims objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another. Any Claim may be estimated and thereafter resolved by any mechanism permitted under the Bankruptcy Code or the Plan.

### 7.2 Claims Filed After Objection Deadline

Any Claim (other than a Fee Claim) not otherwise an Allowed Claim arising from, or evidenced by, a proof of claim or application filed after any deadline imposed by the Court or the Plan (or if none, after the Confirmation Date) shall be deemed a Disallowed Claim without further order of the Court, but the Liquidation Trustee shall be permitted, in his or her sole discretion, to object to Allowance of such Claim and seek an Order disallowing it. A Claimant may seek allowance of a Disallowed Claim described in this section, but the Liquidation Trustee shall not be required to (but may in his or her sole discretion) withhold a full or partial reserve of Cash with respect to such Disallowed Claim until the Liquidation Trustee receives actual notice that it has become an Allowed Claim. Any disbursement of assets of the Liquidation Trust, including but not limited to any Distribution or any expenditure of Trust operating expenses, shall not be affected by its reversal or modification on appeal to the extent such disbursement was received by the transferee in good faith, regardless of whether the transferor knew of the pendency of the appeal.

### 7.3 No Recourse to Liquidation Trustee

Notwithstanding that any particular Disputed Claim or Disallowed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which there is insufficient Cash in the relevant fund or reserve to provide a recovery equal to that received by other holders of Allowed Claims in the relevant Class, no holder of a Claim (including but not limited to the owner of a beneficial interest in the Liquidation Trust) shall have recourse against the Debtor, the Liquidation Trust, the Liquidation Trustee, or any of their respective professionals, or their successors or assigns, or the holder of any other Claim, including Samsonite, or any of their respective property. However, nothing in the Plan shall modify any right of a holder of a Claim under § 502(j) of the Bankruptcy Code. Thus, THE COURT'S ENTRY OF AN ESTIMATION ORDER MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.

### 7.4 Transmittal of Distributions and Notices

(a) Any property or notice which a Person is or becomes entitled to receive pursuant to the Plan may be delivered by first-class mail, postage prepaid, in an envelope addressed to that Person or authorized agent at the address indicated on the latest notice of appearance or the latest proof of claim or other paper filed by that Person or its authorized agent. Absent any of the foregoing, the address set forth in the relevant Schedule of Assets and Liabilities for that Person may be used. Property or notices distributed in accordance with this section shall be deemed delivered to such Person regardless of whether such property is actually received by that Person.

(b)   A holder of a Claim or Interest may designate a different address for notices and Distributions by notifying the Debtor or the Liquidation Trustee of that address in writing. Such notification shall be effective upon the Liquidation Trustee's actual notice of same.

7.5     **Unclaimed Property**

If any Distribution remains unclaimed for a period of 60 days after the relevant Distribution Date to the holder of an Allowed Claim entitled thereto, the Distribution shall constitute Unclaimed Property and the holder shall no longer be entitled to that Distribution or any later Distributions except as otherwise ordered by the Court.  All right, title and interest in and to Unclaimed Property shall immediately vest in the Liquidation Trust, and such property shall be retained by the Liquidation Trust for distribution pursuant to the terms of the Plan, subject, however, to the Liquidation Trustee's sole discretion to distribute Unclaimed Property to holders entitled thereto if such holders are subsequently located.  Any property which is Unclaimed Property immediately before the Final Distribution may, at the Liquidation Trustee's sole discretion, be held in reserve or including among the Distributions made to holders of beneficial interests.

7.6     **Withholding Taxes and Expenses of Distribution**

Any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from Distributions. All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes, and the Liquidation Trustee shall be authorized to withhold Distribution on such Claims until the requisite information is received. If such information is not received within 90 days after the relevant Distribution Date, any Distributions to the Persons holding such Claims shall be retained by the Litigation Trustee as Unclaimed Property.  In addition, all Distributions under the Plan or from the Liquidation Trust, other than any Distribution(s) on account of Class 2 Rights, shall be net of the actual and reasonable costs of making such Distributions and of any allocable fees or other charges relating thereto.

7.7     **Disputed Payment**

If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Liquidation Trustee may, in lieu of making such Distribution, hold such Distribution in escrow or deposit such Distribution into the registry of the Court, until the disposition thereof shall be determined by Court order or by written agreement among the interested parties to such dispute.

7.8     **Distribution Record Date**

As of the close of business on each Distribution Record Date, the right of the holder of a Claim or Interest, including but not limited to a beneficial interest in the Liquidation Trust, to transfer such Claim or Interest to another Person with the intention of receiving any Distribution on account of thereof shall terminate, and the Liquidation Trustee shall not be required to give effect to any purported transfer(s) that become effective thereafter, with respect to the applicable Distribution Date, as more fully set forth in § 6.8 hereof.

-25-

7.9    **Setoffs**

Except as otherwise provided in the Plan, the Confirmation Order, or in agreements previously approved by Final Order of the Court, the Debtor or the Liquidation Trustee may, pursuant to applicable law, set off against any Claim (for purposes of determining the Allowed amount of such Claim on which a Distribution shall be made and before any Distribution is made on account of such Claim) any and all of the claims, rights, and causes of action of any nature that the Debtor, the Estate or the Liquidation Trust may hold against the holder of such Claim. Any and all rights of setoff of the Debtor are hereby preserved and shall be transferred and assigned to the Liquidation Trust and be enforceable by the Liquidation Trustee in the same manner and to the same extent that the Debtor could have exercised such rights of setoff.

Except as otherwise agreed or provided in the Plan, neither the failure to effect a setoff, the allowance of any Claim hereunder, any other action or omission of the Debtor or the Liquidation Trust, nor any provision of this Plan or the Confirmation Order shall constitute a waiver or release by the Debtor or the Liquidation Trust of any such claims, rights, and causes of action that the Debtor or the Liquidation Trustee may assert against such holder. To the extent the Debtor or the Liquidation Trustee fail to set off against a creditor's Claim and seek to collect a claim from such creditor after making a Distribution to such creditor pursuant to the Plan, the Debtor or the Liquidation Trustee, if successful in asserting such claim, shall be entitled to full recovery against such creditor. The Liquidation Trustee may seek periodic Court approval for any such setoff or setoffs.

7.10    **Miscellaneous Distribution Provisions**

(a)    **Method of Cash Distributions.** Any Cash payment to be made by the Liquidation Trustee pursuant to the Plan will be in U.S. dollars (except as otherwise agreed with any respective transferee) and may be made, at the sole discretion of the Liquidation Trustee, by draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law.

(b)    **Distributions on Non-Business Days.** Any payment or Distribution due on a day other than a Business Day may be made, without interest, on the next Business Day.

(c)    **No Distribution in Excess of Allowed Amount of Claim.** Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive in respect of such Claim any Distribution in excess of the Allowed amount of such Claim. Except as otherwise expressly provided herein, no Claim (other than an Allowed Secured Claim) shall be Allowed, nor Distribution made, to the extent that it is for interest accruing after the Petition Date.

(d)    **Minimum Distributions.** If any Distribution to be made to a holder of an Allowed Claim would be $10.00 or less in the aggregate, notwithstanding any contrary provision of this Plan, the Liquidation Trustee may, in the Liquidation Trustee's sole discretion and without notice to the holder thereof, determine that such Distribution should not be made, and the Cash that would otherwise constitute such Distribution shall be treated as Unclaimed Property.

#10973797 v2

(e) **Disposition of Excess Funds.** After 10 days following the Final Distribution Date, any Cash remaining in the Liquidation Trust, including but not limited to Unclaimed Property, shall be included in the Wind-Down Reserve. To the extent that any assets, including but not limited to Cash, remains in the Liquidation Trust after the Liquidation Trustee has satisfied and discharged all the expenses of the Liquidation Trust and the dissolution of the Debtor, the Liquidation Trustee may dispose of such assets by transferring them to one or more charitable organizations or may apply to the Court for further instruction. Nothing in the foregoing sentence shall confer upon the Liquidation Trustee a duty to any charitable organization that may receive, receives, or would have received any assets under the Plan, or upon such charitable organization any rights of expectancy or entitlement.

## ARTICLE VIII - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 8.1 Assumption or Rejection of Executory Contracts and Unexpired Leases

On the Confirmation Date, all prepetition executory contracts and unexpired leases of the Estate shall be rejected by the Debtor under §§ 365 and 1123 of the Bankruptcy Code, except (a) any executory contract or unexpired lease that is the subject of a separate motion to assume or assume and assign filed pursuant to § 365 of the Bankruptcy Code by the Debtor before the entry of the Confirmation Order; or (b) any executory contract or unexpired lease assumed pursuant to an order of the Court. Notwithstanding anything in this Plan to the contrary, no executory contract or unexpired lease shall be deemed assumed or rejected pursuant to the terms of this Article VIII if the Effective Date fails to occur for any reason.

### 8.2 Postpetition Executory Contracts or Unexpired Leases

Any postpetition executory contract or unexpired lease to which the Debtor is a party shall on the Effective Date automatically be deemed assigned by the Debtor to the Liquidation Trustee without recourse.

## ARTICLE IX - EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

### 9.1 Surrender of Securities and Cancellation of Existing Securities and/or Related Agreements

(a) **Surrender of Securities.** Each holder of any Claim against or Interest in the Debtor shall surrender to the Liquidation Trustee any original note, instrument, certificate, certificated security or other item evidencing such Claim or Interest, to the extent not already in the Debtor's possession, and provide copies of any supporting agreement or other document. Unless the Liquidation Trustee agrees otherwise, no Distribution hereunder shall be made to or on behalf of any holder of a Claim unless and until such holder surrenders such items to the Liquidation Trustee or demonstrates the non-availability of such items to the satisfaction of the Liquidation Trustee, including requiring such holder to post a lost instrument or other indemnity bond, among other things, to hold the Debtor and the Liquidation Trustee harmless in respect of such instrument or other item described above and any Distributions made in respect thereof. Any such holder that fails to surrender such items described above or satisfactorily explain their non-availability to the Liquidation Trustee within 15 days before the initial Distribution Date, or such later date as the Liquidation Trustee may designate, may be deemed by the Liquidation Trustee to

have no further Claim against the Debtor, the Liquidation Trust, or their property in respect of such Claim and shall not participate in any Distribution hereunder, and the Distribution that would otherwise have been made to such holder shall be treated as Unclaimed Property. Notwithstanding the immediately preceding sentence, any holder of a Disputed Claim shall not be required to surrender such items until the time such Claim is Allowed or Disallowed.

(b)     **Cancellation of Existing Securities and/or Related Agreements.** Except for purposes of evidencing a right to receive Distributions under this Plan or otherwise provided hereunder, on the Effective Date, all agreements and other documents evidencing (i) any Claims or rights of any holder of a Claim against or Interest in the applicable Debtor and (ii) any options or warrants to purchase Interests, obligating the applicable Debtor to issue, transfer or sell Interests or any other capital stock of the applicable Debtor, shall be canceled and terminated and of no further force or effect.

9.2     **Releases, Exculpation and Related Injunction**

(a)     **Satisfaction of Claims and Interests in the Debtor.** The treatment to be provided for respective Allowed Claims against or Interests in the Debtor pursuant to the Plan shall be in full satisfaction, settlement, and release of such respective Claims and Interests. Except as otherwise expressly provided for herein, any claims of the Debtor or the Estate against holders of any Allowed Claims or Interests shall not be deemed compromised and are expressly preserved upon confirmation of the Plan.

(b)     **Debtor's Releases.** Pursuant to § 1123(b) of the Bankruptcy Code, as of the Confirmation Date, but subject to the occurrence of the Effective Date, the Debtor shall be deemed to forever waive, release and discharge all Released Parties from and with respect to all Claims, obligations, suits, causes of action, demands, judgments, debts, rights, liabilities, losses, whether known or unknown, in law or in equity, liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforeseen, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place before the Effective Date in any way relating to the Debtor, the Debtor's business or affairs, the Chapter 11 Case, the Plan or the Disclosure Statement that have been or could have been asserted by or on behalf of the Debtor against the Released Parties as of the Effective Date. The release of all such claims in favor of the Released Parties shall bind all creditors, shareholders, the Liquidation Trustee, and other parties in interest in the Chapter 11 Case. ANY SUCH RELEASE SHALL ADDITIONALLY ACT AS AN INJUNCTION AGAINST ANY PERSON FROM COMMENCING OR CONTINUING ANY ACTION, EMPLOYMENT OF PROCESS OR ACT TO COLLECT, OFFSET, OR RECOVER ANY CLAIM THAT IS SO RELEASED. Without limitation, the foregoing release shall include any claims which were available to Persons outside of bankruptcy but which the Estate became entitled to enforce under § 544 of the Bankruptcy Code.

(c)     **Third Party Releases.** As of the Confirmation Date, but subject to the occurrence of the Effective Date, and except as otherwise expressly provided in the Confirmation Order or herein, for good and valuable consideration, the adequacy of which is hereby confirmed, (i) each holder of a Claim that votes to accept the Plan as set forth on the relevant Ballot and (ii) to the fullest extent permissible under applicable law, as such law may be

extended or integrated after the Effective Date, each holder of a Claim or Interest that does not vote to accept the Plan, shall be deemed to have forever covenanted with the Debtor and with each of the Released Parties to waive, release and discharge all Claims, obligations, suits, causes of action, demands, judgments, debts, rights, liabilities, losses, whether known or unknown, in law or in equity, liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place before the Effective Date in any way relating to the Debtor, the Debtor's business or affairs, the Chapter 11 Case, the Plan or the Disclosure Statement that could have been asserted by such holder of a Claim or Interest against the Released Parties as of the Effective Date.

(d) **Samsonite Released Parties**. For good and valuable consideration (including but not limited to the reduced recoveries to which Samsonite has agreed in connection with Distributions under this Plan), the adequacy of which is hereby confirmed, upon the Effective Date, any and all claims, causes of action, demands, obligations, suits, judgments, debts, rights, liabilities, losses, including but not limited to, the Litigation Claims, whether known or unknown, in law or in equity, liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforeseen, against Samsonite and its present and former officers, directors, employees, members, managers, agents, representatives, attorneys, accountants, advisors, professionals (in such capacity) (the "Samsonite Released Parties") that any Entity (as that term in defined in section 101(15) of the Bankruptcy Code), including but not limited to, (a) the Debtor, including its present and former officers, directors, employees, members, managers, agents, representatives, attorneys, accountants, advisors, professionals (in such capacity) and their successors and assigns; (b) the Estate; (c) the Liquidation Trustee and (d) each holder of a Claim that votes to accept the Plan as set forth on the relevant Ballot and to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each holder of a Claim or Interest that does not vote to accept the Plan, asserted, may have asserted, could have asserted or could in the future assert, directly or indirectly against the Samsonite Released Parties in connection with, arising out of, or in any way relating to any act, transition, event or omission taking place on or prior to the Effective Date arising out of, or in any way relating to the Debtor, the Estate, the Debtor's business or affairs, this Chapter 11 Case, the Plan or the Disclosure Statement (i) shall be deemed released, waived, compromised, and extinguished as of the Effective Date; (ii) shall not be preserved for the benefit of the beneficiaries of the Liquidation Trust; and (iii) shall not be deemed to be among the assets transferred and assigned to the Liquidation Trust on the Effective Date.

(e) **Release of Liens and Perfection of Liens**. Except as otherwise specifically provided in the Plan or in any agreement, instrument or document created in connection with the Plan, each holder of a Secured Claim and/or Lien, regardless of whether such holder holds an Allowed Claim, shall, on or immediately before the Effective Date and regardless of whether such Claim has been scheduled or proof of such Claim has been filed: (i) turn over and release to the Debtor or the Liquidation Trustee, as the case may be, any and all property of the Debtor or the Estate that secures or purportedly secures such Claim, or such Lien and/or Claim shall automatically, and without further action by the Debtor, the Estate or the Liquidation Trustee, be deemed released; and (ii) execute such documents and instruments as the Liquidation Trustee requires to evidence such holder's release of such property or Lien.

-29-

If such holder refuses to execute appropriate documents or instruments the Liquidation Trustee may, in the Liquidation Trustee's sole discretion, file or record a copy of the Confirmation Order which shall serve to release such holder's rights in such property. Any such action by the Liquidation Trustee shall be at the holder's expense, and the Liquidation Trustee shall be entitled to recover from such holder all costs, including but not limited to actual attorney's fees on account of such action, and/or to set off such costs against any Distribution to be made to the holder.

Without limiting the release provisions of the immediately preceding subparagraph and except as otherwise agreed by the Liquidation Trustee: (i) no distribution hereunder shall be made on account of any Claim, Interest, or beneficial interest in the Liquidation Trust unless and until the holder thereof executes and delivers to the Debtor or the Liquidation Trust (as applicable) such release of Liens or otherwise turns over and releases such Cash, pledge, or other possessory Liens; and (ii) any such holder that fails to execute and deliver such release within 90 days of the Effective Date shall be deemed to have no Claim, Interest, or beneficial interest in the Liquidation Trust and shall not receive in any Distribution hereunder or from the Liquidation Trust.

(e) **Injunction.** All Persons who have held, hold, or may hold Claims against or Interests in the Debtor shall, with respect to any such Claims or Interests, be permanently enjoined from and after the Confirmation Date from taking any of the following actions (other than actions to enforce any rights or obligations under the Plan): (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor, the Estate, the Liquidation Trust, the Liquidation Trustee, or any of their property; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtor, the Estate, the Liquidation Trust, the Liquidation Trustee, or any of their property; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the Estate, the Liquidation Trust, the Liquidation Trustee or any of their property; (iv) asserting any right of setoff, directly or indirectly, against any obligation due the Debtor, the Estate, the Liquidation Trust, the Liquidation Trustee or any of their property, except as contemplated or allowed by the Plan or the Confirmation Order; (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; (vi) pursuing, prosecuting, or recovering proceeds on account of my claims belonging to transferred to, or conferred upon the Liquidating Trust (or which will belong to, be transferred to, or conferred upon the Liquidation Trust on the Effective Date) and (vii) prosecuting or otherwise asserting any right, claim, or cause of action released pursuant to the Plan.

(f) **Indemnification.** Notwithstanding anything to the contrary in this Plan, the Debtor's obligations to indemnify Persons who served during the Chapter 11 Case as the Debtor's officers and employees existing under applicable nonbankruptcy law (whether arising under contract, bylaw, or certificate of incorporation) with respect to all present and future actions, suits, and proceedings against any of such indemnified Persons, based upon any act or omission related to service with, for, or on behalf of the Debtor at any time during the period from the Petition Date through the Effective Date (including acting as employee benefit plan fiduciaries or employee benefit administrative trustees), in all cases net of applicable insurance

proceeds, other than for acts constituting willful misconduct or gross negligence shall continue as obligations for the Liquidation Trust after the Effective Date; provided, however, that unless otherwise ordered by the Court (which order may be entered at any time) neither the Debtor nor the Liquidation Trust shall be required to reserve for any such obligations and such obligations shall be terminated and discharged upon the later to occur of the entry of a Final Order closing the Chapter 11 Case and the dissolution of the Liquidation Trust.

(g) **Exculpation.** The Released Parties and any property of or professionals retained by such parties, or direct or indirect predecessor-in-interest to any of the foregoing Persons, will not have or incur any liability to any Person for any act taken or omission occurring on or after the Petition Date in connection with or related to the Debtor or the Liquidation Trust, including but not limited to (i) the commencement and administration of the Chapter 11 Case, (ii) the operation of the Debtor during the pendency of the Chapter 11 Case, (iii) formulating, preparing, disseminating, implementing, confirming, consummating, or administering the Plan (including soliciting acceptances or rejections thereof); (iv) submission of and statements made in, the Disclosure Statement or any contract, instrument, release or other agreement or document entered into, or any action taken or omitted to be taken in connection with the Plan; or (v) any Distributions made pursuant to the Plan, except for acts constituting willful misconduct or gross negligence, and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. The entry of the Confirmation Order shall constitute a determination by the Court that the Debtor, the Liquidation Trustee and each of their respective present or former officers, directors, professionals, employees, members, trustees, agents, attorneys, financial advisors, partners and accountants shall have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code, pursuant to, among other provisions of law, § 1125(e) and 1129(a)(3) of the Bankruptcy Code, with respect to the foregoing.

(h) **Direct Claims.** Except as otherwise expressly provided herein, this Plan shall in no manner act or be construed to waive, release, or enjoin any direct, non-derivative claims or actions held by a non-Debtor against any third party.

## ARTICLE X - CONDITIONS TO CONFIRMATION AND CONSUMMATION

10.1 **Conditions to Consummation**

This Plan may not be consummated, and the Effective Date shall not occur, unless and until each of the conditions set forth below is satisfied.

(a) The Confirmation Order shall have become a Final Order; and

(b) The Debtor and the Liquidation Trust determine, in their sole discretion, that they have sufficient Cash on hand (or to provide timely Cash) to make timely Distributions sufficient (including allocating Cash to reserves as provided in this Plan) to make payments in respect of all Allowed Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, Samsonite Rights, and Convenience Claims required as of the Initial Distribution Date.

## 10.2    Effect of Non-Occurrence of the Conditions to Consummation

After entry of the Confirmation Order, if one or more of the conditions to consummation has not been satisfied and the Debtor determines that it is impossible or unlikely that such condition(s) will be satisfied, the Confirmation Order may be vacated by the Court. If the Confirmation Order is vacated, the Plan shall be null and void in all respects, and nothing contained in the Plan shall constitute a waiver or release of any Claims by or against, or Interests in, the Debtor.

## ARTICLE XI - RETENTION OF JURISDICTION

### 11.1    Retention of Jurisdiction.

Notwithstanding confirmation of the Plan or occurrence of the Effective Date, the Court shall retain such jurisdiction to the extent the Court had jurisdiction immediately prior to the Confirmation Date (or to the extent that the Court subsequently acquires jurisdiction), including but not limited to for the following purposes:

(i)    To determine the allowability, classification, or priority of Claims upon objection by the Debtor the Liquidation Trustee, or any other party in interest entitled to file an objection, and the validity, extent, priority, and avoidability of Liens;

(ii)    To issue injunctions, take such other actions, or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Court in the Chapter 11 Case on or before the Effective Date;

(iii)    To protect the property of the Estate, including Litigation Claims, from claims against, or interference with, such property, including but not limited to actions to quiet or otherwise clear title to such property or to resolve any dispute concerning Liens on any property of the Estate or the Liquidation Trust;

(iv)    To determine any and all applications for allowance of Fee Claims and any disputes concerning post-Effective Date professional or other services to the extent not otherwise resolved;

(v)    To determine the validity, priority, amount, avoidability, and/or classification any Priority Tax Claims, Priority Non-Tax Claims, Administrative Claims or any other request for payment of claims or expenses entitled to priority under section 507(a) of the Bankruptcy Code, or any Convenience Claims;

(vi)    To approve, or to resolve any dispute related to, the making of Distributions hereunder including but not limited to any reserves required;

(vii)    To determine any and all motions related to the rejection, assumption, or assignment of executory contracts or unexpired leases, or to determine any motion to reject an executory contract or unexpired lease pursuant to Section 8.1 of the Plan;

(viii)    To determine all applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted in the Chapter 11 Case, including any remands;

(ix)    To modify the Plan under § 1127 of the Bankruptcy Code, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out their intent and purpose;

(x)    To issue orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Person, to the fullest extent authorized by the Bankruptcy Code;

(xi)    To determine any and all proceedings to set aside Liens or to recover any transfers, assets, properties or damages to which the Debtor may be entitled under applicable provisions of the Bankruptcy Code or any other federal, state, or local laws;

(xii)    To determine any tax liability pursuant to § 505 of the Bankruptcy Code;

(xiii)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(xiv)    To resolve any disputes concerning whether a Person had sufficient notice of the Chapter 11 Case, the applicable Claims bar date, the hearing to consider approval of the Disclosure Statement or the Confirmation Hearing, or for any other noticing purpose relating to the Chapter 11 Case;

(xv)    To authorize sales of assets as necessary or desirable and resolve objections, if any, to such sales;

(xvi)    To hear and adjudicate Litigation Claims;

(xvii)    To resolve any disputes concerning, and enforce, any release, waiver, discharge, or exculpation hereunder or any injunction against acts, employment of process, or actions arising hereunder;

(xviii)    To determine the validity, priority, amount, and/or classification of any Claim or Interest, and/or the existence, extent, priority avoidability and/or adequacy of perfection of any Lien securing such Claim or Interest, and to the extent any Person asserts a beneficial interest in the Liquidation Trust as a result of such Claim or Interest, to determine the validity and extent of such beneficial interest;

(xix)    To approve any settlement entered into or offset exercised by the Liquidation Trustee in connection with Allowance or payment on account of any Claim or Interest, to the extent required hereunder or to the extent that the Liquidation Trustee determines

in the Liquidation Trustee's sole discretion that approval is appropriate or advisable under the circumstances;

(xx)    To enter a Final Order closing the Chapter 11 Case; and

(xxi)    To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or the Liquidation Trust Agreement, or as may be authorized under the Bankruptcy Code, including but not limited to § 105(a) thereof.

11.2    **Retention of Jurisdiction Does Not Limit Liquidation Trustee's Powers.**

Notwithstanding any of the foregoing provisions for the Court's retention of jurisdiction, any right, privilege, or power of the Debtor or the Liquidation Trustee shall not require approval of the Court except to the extent required under the Plan, the Confirmation Order, or the Liquidation Trust Agreement, but the Debtor or the Liquidation Trustee may apply to the Court for approval, instructions, or clarification regardless of whether specified therein.

## ARTICLE XII - ADMINISTRATIVE PROVISIONS

12.1    **Amendments**

(a)    **Pre-confirmation Amendment.** The Debtor may modify the Plan at any time prior to the entry of the Confirmation Order, provided that the Plan, as modified, and the Disclosure Statement meet any applicable requirements under the Bankruptcy Code.  The Debtor shall also be permitted to file an exhibit or supplement containing the form of the Liquidation Trust Agreement without resoliciting acceptances of the Plan.

(b)    **Post-Confirmation Amendment Not Requiring Re-Solicitation.** After the entry of the Confirmation Order, the Debtor or the Liquidation Trustee may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that: (i) the Debtor shall obtain approval of the Court for such modification, after notice and a hearing; and (ii) such modification shall not materially and adversely affect the interests, rights, or treatment of any Allowed Claims or Interests under the Plan.

(c)    **Post-Confirmation/Pre-Consummation Amendment Requiring Re-Solicitation.**  After the Confirmation Date and before substantial consummation of the Plan, the Debtor or the Liquidation Trustee may modify the Plan in a way that materially or adversely affects the interests, rights, or treatment of Allowed Claims or Interests, provided that: (i) the Plan, as modified, meets any applicable requirements under the Bankruptcy Code; (ii) the Debtor or the Liquidation Trustee shall obtain Court approval for such modification, after notice and a hearing; (iii) such modification is accepted by at least two-thirds in amount, and more than one-half in number, of Allowed Claims or Interests voting (and entitled to vote) in each Class affected by such modification; and (iv) the Debtor or the Liquidation Trustee shall comply with the provisions of the Bankruptcy Code, including § 1125 of the Bankruptcy Code, with respect to

the Plan as modified, but only as to such classes as shall have Claims or Interests materially or adversely affected by such modification.

### 12.2    Post-Effective Date Expenses.

The Liquidation Trustee is empowered to pay the Liquidation Trustee's compensation, all professional fees, and other expenses incurred by the Liquidation Trust or the Debtor from and after the Effective Date, and otherwise deal with property of the Estate and the Liquidation Trust, without the necessity of application to, or further order of, the Court, but the Court retain jurisdiction to resolve any relevant disputes.

### 12.3    Successors and Assigns

The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Person.

### 12.4    Governing Law

Except to the extent that the Bankruptcy Code, Bankruptcy Rules, or other federal laws or rules apply, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of Delaware, without giving effect to principles of conflict of laws.

### 12.5    Courts of Competent Jurisdiction

If the Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of this Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

### 12.6    Corporate Action

The dissolution of the Debtor and the other matters provided for under the Plan involving the corporate or entity structure of the Debtor, or corporate action, as the case may be, to be taken by or required of the Debtor, shall be deemed to have occurred and be effective as provided herein and shall be authorized and approved in all respects, without any requirement of further action by stockholders or directors of the Debtor or the Liquidation Trustee, as the case may be.

### 12.7    Effectuating Documents and Further Transactions

The Debtor and the Liquidation Trustee are authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, and take such other actions, as may be necessary or desirable to effectuate and further evidence the terms and conditions of the Plan.

12.8    **Cramdown**

The Debtor requests confirmation of the Plan under § 1129(b) of the Bankruptcy Code with respect to any Class that does not accept, or is deemed not to have accepted, this Plan pursuant to § 1126(g) of the Bankruptcy Code. The Debtor reserves the right to (i) request confirmation of this Plan under § 1129(b) of the Bankruptcy Code with respect to any Class that does not accept this Plan pursuant to § 1126 of the Bankruptcy Code and (ii) to modify this Plan to the extent, if any, that confirmation of this Plan under § 1129(b) of the Bankruptcy Code requires modification.

12.9    **Confirmation Order and Plan Control**

To the extent the Confirmation Order and/or this Plan is inconsistent with the Disclosure Statement, the Liquidation Trust Agreement, any other agreement entered into between or among the Debtor and any third party, the Plan controls the Disclosure Statement and any such agreements, and the Confirmation Order (and any later order of the Court) controls the Plan. Notwithstanding the foregoing, each Sale Order entered into before the Confirmation Date shall survive the confirmation of the Plan and the entry of the Confirmation Order.

12.10   **Severability**

In the event that the Court determines, prior to the Confirmation Date, that any provision of this Plan is invalid, void or unenforceable, the Court shall, with the consent of the Debtor, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistently with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12.11   **Rules of Construction**

(a)      **Undefined Terms.** Any term used herein that is not defined herein shall have the meaning ascribed to such term in the Bankruptcy Code and/or the Bankruptcy Rules, if used therein.

(b)      **Miscellaneous Rules.** (i) The words "herein," "hereof," "hereunder," and other words of similar import refer to this Plan as a whole, not to any particular section, subsection, or clause, unless the context requires otherwise; and shall also refer to the Confirmation Order except as expressly provided; (ii) the rules of construction set forth in § 102 of the Bankruptcy Code shall apply to the Plan, the Confirmation Order, and the Liquidation Trust Agreement, except to the extent otherwise provided therein respectively; (iii) any reference to an existing document or exhibit means such document or exhibit as it may have been amended, restated, modified or supplemented; (iv) in computing any period of time prescribed or allowed by the Plan, the provisions of Fed. R. Bankr. P. 9006(a) shall apply as that rule existed

on the Confirmation Date;[1] and (v) whenever the Plan provides that a payment or Distribution shall occur "on" any date, it shall mean "on, or as soon as reasonably practicable after" such date.

### 12.12 **Deadlines.**

To the extend that the Plan, the Confirmation Order, or any other document approved or incorporated into same sets forth any deadline or bar date, such deadline may be enlarged or shortened by the Court in accordance with Fed. R. Bankr. P. 9006, as that rule existed on the Confirmation Date.

### 12.13 **Notices**

All notices or requests in connection with the Plan shall be in writing and deemed to have been given three Business Days after mailing, one Business Day after sending by overnight courier, or on the same day upon service by electronic transmission, addressed to:

(a)     if to the Debtor:

Lambertson Truex, LLC
c/o Maurice Dembsky, Director of Finance
1430 Broadway - Suite 1105
New York, NY 10018
mdembsky@lambertsontruex.com

with copies to:

Adam Hiller, Esquire
Draper & Goldberg, PLLC
1500 North French Street, 2nd Floor
Wilmington, Delaware 19801
adamh@drapgold.com

---

[1] For purposes of convenience, that rule, as it exists on the Confirmation Date, provides as follows: "In computing any period of time prescribed or allowed by these rules or by the Federal Rules of Civil Procedure made applicable by these rules, by the local rules, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days. When the period of time prescribed or allowed is less than 8 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation. As used in this rule and in Rule 5001(c), "legal holiday" includes New Year's Day, Birthday of Martin Luther King, Jr., Washington's Birthday, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day, and any other day appointed as a holiday by the President or the Congress of the United States, or by the state in which the court is held."

#10973797 v2

(b)       if to the Liquidation Trustee:

Maurice Dembsky
1430 Broadway - Suite 1105
New York, NY 10018
mdembsky@lambertsontruex.com

with copies to:

Adam Hiller, Esquire
Draper & Goldberg, PLLC
1500 North French Street, 2nd Floor
Wilmington, Delaware 19801
adamh@drapgold.com

## 12.14 **No Admissions**

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by the Debtor with respect to any matter set forth herein, including but not limited to liability on any Claim or the propriety of a Claim's classification.

Dated: May 15, 2009               LAMBERTSON TRUEX, LLC


by:     (to be supplemented)          
      Maurice Dembsky, Director of Finance


APPROVED BY COUNSEL:

DRAPER & GOLDBERG, PLLC


 **/s/ Adam Hiller**          
Adam Hiller (DE No. 4105)
Michelle Berkeley-Ayres (DE No. 4635)
1500 North French Street, 2nd Floor
Wilmington, Delaware 19801
302-339-8800 telephone
302-213-0043 facsimile

*Attorneys for the Debtor*

**EXHIBIT 1-A**

| Name | Allowed Administrative Claim Amt |
|------|-----:|
| Thomas Joyce | $ 9,533.65 |
| Suzanne McManus | $ 76.35 |
| Carlos Sanmiguel | $ 166.53 |
| Mary Christian | $ 213.84 |
| Michelle Luna | $ 330.96 |
| Victoria Patenaude | $ 253.20 |
| Ximena Santo | $ 163.56 |
| Bret Vasquez | $ 2,529.67 |
| Jonathan Venegas | $ 211.08 |
| | $ 13,478.84 |